2001 UT App 207

**SNOW FLOWER HOMEOWNERS ASSOCIATION, Plaintiff and Appellant,**

v.

**SNOW FLOWER, LTD.; Jack W. Davis, Inc., a California corporation; and Does 1 through 100, Defendants and Appellees.**

No. 20000316–CA.

Court of Appeals of Utah.

June 28, 2001.

Brian J. Babcock and Robert F. Babcock, Babcock, Bostwick, Scott, Crawley & Price, Salt Lake City, for Appellant.

Ronald G. Russell, Parr, Waddoups, Brown, Gee, Loveless, Salt Lake City, for Appellees.

Before GREENWOOD, P.J., and BILLINGS, and THORNE, JJ.

## OPINION

GREENWOOD, Presiding Judge:

¶ 1 Snow Flower Homeowners Association (the Association) brought tort and contract claims against Snow Flower, Ltd. and Jack W. Davis, Inc. (collectively, Davis). These claims resulted from alleged defects in the original construction of the Snow Flower Condominiums (the Condominiums), which were later discovered by the Association during remodeling. The trial court dismissed the Association's negligence and strict liability claims and later granted summary judgment to Davis on the Association's remaining contract actions for breach of express warranty, breach of implied warranty, and breach of implied warranty of habitability.[1] The Association appeals the trial court's decision granting Davis's motions to dismiss and for summary judgment. We affirm.

## BACKGROUND [2]

¶ 2 In 1978 and 1979, Davis, the developer and original seller, contracted for the construction of the Condominiums. Davis sold the Condominium units to private individuals pursuant to earnest money agreements and uniform real estate contracts (collectively, contracts). Many of the original owners have since resold their units to new owners who are now members of the Association and who have no contractual privity with

Davis.[3] Jack W. Davis, Inc. was not a party to any of the contracts, but executed them as a general partner of Snow Flower, Ltd. The contracts do not contain warranties for construction defects or deficiencies, and Davis did not make any oral representations concerning the quality of the Condominiums. The contracts refer to the condominium declarations and the recorded survey map of the Condominiums. Davis transferred title to the individual owners by warranty deeds. The warranty deeds do not mention construction defects or deficiencies, and the deeds each contain a merger clause, which states that only the warranties expressed therein are part of the agreement.

¶ 3 The Association is a non-profit homeowners association created in Summit County in 1978. The Association was formed pursuant to the Utah Condominium Ownership Act (the Condominium Act). The current members of the Association are individuals who became members upon purchasing their units.

¶ 4 Approximately twenty years after the original construction, the Association contracted to remodel portions of the Condominiums. During the remodeling, the Association discovered defects in the original construction, and, as a result, hired Joe A. Rhoads to review the remodel and the original 1978 drawings and specifications. On sheet "G" of the original drawings, the heading "General Notes," No. 1 states: "All construction materials and installation shall comply to the 1976 Uniform Building Code and other Ordinance of Local Governing Authorities." Rhoads and the general contractor found defects in the original construc-

---

1. Although the Association claims these latter breaches include a breach of the implied warranty of fitness, we conclude, as is discussed herein, that these claims, based on the undisputed facts, are indistinguishable from a claim of a breach of an implied warranty of habitability.

2. The Association's tort claims were dismissed on a motion to dismiss; therefore, "we review the facts only as they are alleged in the complaint." *Hall v. Utah State Dep't of Corr.*, 2001 UT 34, ¶ 2, 419 Utah Adv. Rep. 16, 24 P.3d 958. The contract claims were dismissed on Davis's motion for summary judgment, and we would normally recite these facts as presented by the Association.

*See Booth v. Attorneys' Title Guar. Fund*, 2001 UT 13, ¶ 28, 20 P.3d 319 (stating facts and inferences to be drawn therefrom are reviewed " 'in the light most favorable to the nonmoving party' ") (citations omitted). However, these facts are undisputed and are presented here as stated in the trial court's findings of fact.

3. Davis raised additional arguments, such as the doctrine of caveat emptor, regarding those owners who lack contractual privity with Davis. However, because we affirm the trial court's decision on other grounds, we do not address these arguments.

tion, including violations of the building codes.

¶ 5 The Association alleged five causes of action against Davis for (1) strict liability, (2) breach of express warranty, (3) negligence, (4) breach of implied warranty, and (5) breach of implied warranty of fitness. Davis filed a motion to dismiss all the claims, arguing that the tort claims should be dismissed under the economic loss rule and that the strict liability claim failed as a matter of law. Davis argued that the negligence claims should be dismissed for lack of privity and that the implied warranty claims were not allowable because Utah does not permit claims for implied warranties of habitability. The trial court agreed that the tort claims failed under the economic loss rule and granted Davis's motion to dismiss in part. The trial court, however, denied Davis's motion to dismiss the remaining contract claims.

¶ 6 Davis later filed a motion for summary judgment seeking dismissal of the remaining contract claims, essentially raising the same arguments as in its earlier motion to dismiss. The trial court granted summary judgment to Davis and entered a final judgment as to all claims. The trial court concluded there were no express warranties in the contracts, declaration, or map, and dismissed the breach of warranty claim. The trial court dismissed both the implied warranty claims based on the Utah Supreme Court's holding in *American Towers Owners Ass'n v. CCI Mechanical, Inc.*, 930 P.2d 1182 (Utah 1996). The Association timely appealed.

## ISSUES AND STANDARDS OF REVIEW

¶ 7 The Association first contends the trial court erred in granting Davis's motion to dismiss the tort causes of action for failure to state a claim under Rule 12(b)(6) of the Utah Rules of Civil Procedure. "Because the propriety of a dismissal under Utah Rule of Civil Procedure 12(b)(6) is a question of law, we give the trial court's ruling no deference and review it under a correctness standard." *Warner v. DMG Color, Inc.*, 2000 UT 102,¶ 6, 20 P.3d 868. In our review of a decision dismissing a case under Rule 12(b)(6) "we 'accept the factual allegations in the complaint as true and con-

sider all reasonable inferences to be drawn from those facts in a light most favorable to the plaintiff.'" *Hall v. Utah State Dep't of Corr.*, 2001 UT 34,¶ 2, 419 Utah Adv. Rep. 16, 24 P.3d 958. (citation omitted).

¶ 8 The Association next argues the trial court erred in granting summary judgment to Davis on the remaining contract causes of action. "Summary judgment should be granted only if there has been a showing 'that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Booth v. Attorneys' Title Guar. Fund*, 2001 UT 13,¶ 28, 20 P.3d 319 (quoting Utah R. Civ. P. 56(c)). The Association does not contest the factual findings of the trial court or contend there are disputed issues of fact, but challenges only the legal conclusions drawn from the undisputed facts. "In reviewing the district court's grant of summary judgment, 'we review the court's legal decisions for correctness, giving no deference [to the district court's determination].'" *Id.* (citation omitted). In the present case, the trial court interpreted the contracts. Contract interpretation "is a question of law," which we review without deference to the trial court. *Nova Cas. Co. v. Able Constr., Inc.*, 1999 UT 69,¶ 6, 983 P.2d 575.

## ANALYSIS

### Tort Claims

¶ 9 The Association presented two tort claims against Davis. First, the Association argued that Davis, as the developer, was negligent and that this negligence resulted in the construction defects found in the Condominiums. The Association also argued that it had a strict liability claim because the construction defects created an extreme risk to the condominium owners.

### A. Negligence

¶ 10 The trial court dismissed the negligence claim in accordance with the economic loss rule as enunciated by the supreme court in *American Towers Owners Ass'n. v. CCI Mechanical, Inc.*, 930 P.2d 1182 (Utah 1996). In *American Towers*, the supreme

court applied the economic loss rule to a homeowners association action against several defendants alleging plumbing and construction defects in a large condominium complex. *See id.* at 1184, 1188–1192. The court stated: "The 'economic loss rule' is the majority position that one may not recover 'economic' losses under a theory of non-intentional tort." *Id.* at 1189 (quoting *Maack v. Resource Design & Constr., Inc.*, 875 P.2d 570, 579–80 (Utah Ct.App.1994)). Economic loss is defined as:

> "[D]amages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits-without any claim of personal injury or damage to other property ... as well as 'the diminution in value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold.'"

*Id.* (quoting *Maack*, 875 P.2d at 580). "In other words, economic damages are not recoverable in negligence *absent physical property damage or bodily injury.*" *Id.* (emphasis added). Accordingly, "contract principles resolve issues when the product does not meet the user's expectations, while tort principles resolve issues when the product is unsafe to person or property." *Id.* at 1190. Therefore, without an injury, a party may only pursue its contractual remedies.

¶ 11 In the present case, the Association seeks reimbursement for the costs it incurred in correcting the defects in the original construction. The Association does not claim the defects caused physical damage to other property or bodily injury to any person. Thus, without these damages, the Association's negligence claim necessarily fails. *See id.; see also Cathco, Inc. v. Valentiner Crane Brunjes Onyon Architects*, 944 P.2d 365, 368 (Utah 1997) (noting *American Towers* prevents recovery of economic damages in tort law absent injury to persons or property). Accordingly, the trial court correctly dismissed the Association's negligence claim.

¶ 12 The Association argues that the economic loss rule does not prevent their claim because *American Towers* applied the economic loss rule only to builders, and the Association has made its claims against Davis as the developer of the Condominiums. In essence, the Association argues that as the developer, Davis had a distinct duty to verify that the Condominiums met the building code requirements. We disagree.

¶ 13 The Association has failed to demonstrate that the express reasoning set forth in *American Towers* does not apply to developers. The supreme court noted in its decision that American Towers, Inc., a developer of the two condominium projects at issue in that case, was granted summary judgment by the trial court on the same grounds as the other defendants, including application of the economic loss rule. *See American Towers*, 930 P.2d at 1184, 1185. The supreme court affirmed the grants of summary judgment to the several defendants without distinguishing the claims against the builders and developers. *See id.* at 1188–1192. Thus, the economic loss rule expressed in *American Towers* was specifically applied to developers and the trial court properly applied the economic loss rule to Davis.

¶ 14 At oral argument the Association urged that the dangerous condition created by the defects is likely to cause injury and urged that we create an exception to the economic loss rule. Specifically, the Association argues that it should not be barred from recovering costs associated with the prevention of an injury simply because that injury has yet to materialize. However, because the Association did not present this argument to the trial court in its memorandum opposing Davis' motion to dismiss, nor did the Association adequately brief this issue, we will not address it on appeal. " 'This court has routinely declined to consider arguments which are not adequately briefed on appeal.'" *Burns v. Summerhays*, 927 P.2d 197, 199 (Utah Ct.App.1996) (citation omitted). The Association cites no legal authority for its assertion that we should create an exception to the economic loss rule. Therefore, where "the [Association] has failed to provide adequate legal analysis and legal authority in support of [its] claims, [the Association's] assertions do not permit appellate review." *Id.* at 199–200; *see also* Utah R.App. P. 24(a)(9) (requiring appellant's argument to "contain the contentions and rea-

sons of the appellant with respect to the issues presented ... with citations to authorities, statutes, and parts of the record relied on").

¶ 15 In sum, the economic loss rule prevents recovery for the alleged defects in the Condominium caused by Davis's negligence, and the trial court properly dismissed the Association's negligence claim.

### B.  Strict Liability

■■ ¶ 16 The Association also argues the trial court erred when it dismissed its strict liability claim as a matter of law.  However, we believe the trial court properly dismissed this claim consistent with the supreme court's decisions in *American Towers* and *Ernest W. Hahn, Inc. v. Armco Steel Co.*, 601 P.2d 152 (Utah 1979).

¶ 17 As discussed above, the supreme court in *American Towers* held that the economic loss rule prevents "recover[y][for] 'economic' losses under a theory of non-intentional tort." *American Towers*, 930 P.2d at 1189 (citations omitted); *see also Cathco*, 944 P.2d at 368. In *American Towers*, the supreme court applied this rule to the defective construction of a condominium complex. *See id.* at 1189.  In the present case, there is no damage to property or persons, but only economic losses suffered by the Association.  Therefore, the holding of *American Towers* bars recovery of losses under any theory of non-intentional tort, including strict liability.

¶ 18 Further, this state's adoption of Section 402A of the Restatement (Second) of Torts precludes recovery in this case.  The supreme court, in *Hahn*, adopted section 402A of the Restatement (Second) of Torts, which defines strict liability. *See Hahn*, 601 P.2d at 156, 158.  The supreme court stated that: "One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for *physical harm thereby caused* to the ultimate user or consumer, or his property." *Id.* at 156 (quoting Restatement (Second) of Torts § 402A (1965)) (emphasis added).  Because no injury has oc-

curred to persons or property as a result of the claimed construction defects, the claim for strict liability fails as a matter of law.  Thus, the trial court properly dismissed the Association's strict liability claim.

### Contract Claims

¶ 19 As previously stated, any remedies for the economic losses suffered by the Association can be pursued only through its contractual relationship with Davis.  Thus, we now consider the Association's contractual claims.

### A.  Express Warranty

■■ ¶ 20 The Association presented three contractual claims against Davis.  The first of these was an express warranty claim.  The trial court determined that no express warranties existed as a matter of law.  The Association argues Davis expressly warranted that the Condominiums would meet the applicable building codes, and because the Condominiums do not meet these codes, Davis has breached the warranty.  The Association does not dispute that the contracts did not contain express warranties.  However, the Association relies on a chain of statements recorded on the property, including the condominium declaration and survey map, both of which are referenced in the contracts.  These documents state that the Condominiums would be built in accordance with the Condominium Act. *See* Utah Code Ann. §§ 57–8–1 to –36 (2000).[4]  The Association concludes that the express warranties are incorporated into the contracts by the Condominium Act, which states, in part: "No condominium project ... shall be permitted which is not in compliance with said ordinances and codes." *Id.* § 57–8–35(2).

¶ 21 Davis counters that no express warranties are included in the contracts relating to the building codes.  Davis also argues the merger doctrine would prevent any references to the Condominium Act from creating an express warranty and the addition of terms creating these warranties is inconsis-

---

4.  As amendments to the Condominium Act have not affected the material provisions of the Act, we cite the current language.

tent with Utah law controlling warranty deeds.

¶ 22 It is undisputed that the contracts that transferred title to the units to individual owners contained abrogation clauses. The clause in question specifically stated that no other agreements existed between the parties, which were not set forth in the contracts or attached to them. The contracts contained no language relating to the building codes. In *Schafir v. Harrigan*, 879 P.2d 1384 (Utah Ct.App.1994), this court acknowledged that only warranties "contained in the warranty deed ... survive[] the delivery and acceptance of the warranty deed." *Id.* at 1392. Thus, "the merger doctrine extinguishes [any preliminary agreement] and makes preeminent the warranty deed." *Id.* We also note that "[s]ection 57–1–12 of the Utah Code lists the specific warranties given when property is conveyed by warranty deed." *Id.; see also* Utah Code Ann. § 57–1–12 (2000). This section does not require that Davis guarantee the Condominiums meet the applicable building codes.

¶ 23 In conjunction with its argument for an express warranty, the Association argues that section 57–8–35(2) of the Condominium Act creates a private right of action. However, the plain language of the Act does not so provide. The Condominium Act addresses causes of action in section 57–8–33; however, this section only states that without limiting the rights of any owner, a manager or the management committee may bring an action on behalf of one or more of the owners. *See* Utah Code Ann. § 57–8–33.

¶ 24 Without explicit language conferring a new right of action, we may not read one into the statute if the statute is unambiguous on its face. In *Adkins v. Uncle Bart's, Inc.*, 2000 UT 14, ¶¶ 31–32, 1 P.3d 528, the supreme court did not allow the injured party to bring a third party claim against the vendor for wrongful death under the Dramshop Act when the Dramshop Act explicitly allowed new causes of actions, but did not provide for an action for wrongful death. *See id.* The court stated that statutory rights "may not be enlarged ... unless the Act expressly states such a right." *Id.* ¶ 32.

¶ 25 This court reached a similar conclusion on more factually similar grounds in *Reedeker v. Salisbury*, 952 P.2d 577 (Utah Ct.App.1998). In that case, the plaintiffs sought to hold trustees personally liable for actions that violated the Condominium Act. The Condominium Act did not address the liability of trustees, but stated that the Condominium Act was subject to other laws so long as there was no conflict. This court noted that trustee liability was addressed in the Nonprofit Corporation and Co–Operative Act, which limited trustee liability to intentional misconduct. *See id.* at 584. This court concluded that as the Condominium Act was silent, the other provisions controlled and no cause of action, which did not include intentional acts, was created by the Condominium Act. *See id.* at 586.

¶ 26 In the present case, the Condominium Act contains no language creating a private right of action. Appellants cite section 57–8–35(2) for the proposition that the Act prohibits condominium projects that do not comply with the applicable building codes and argue that this section provides a basis for their suit. However, the balance of this section indicates that this requirement is directed to local governments and sets out the requirements for condominiums to gain final approval from counties or municipalities. *See* Utah Code Ann. § 57–8–35 (2000).

¶ 27 In sum, the merger doctrine extinguished any references that might have created warranties regarding Davis's compliance with the applicable building codes. The Condominium Act neither imposes such warranties on transfers of real property, nor creates a private right of action. Accordingly, the trial court properly granted Davis's motion for summary judgment on the Association's express warranty claims.

### B. Implied Warranties

¶ 28 Although the Association argues that its implied warranty claims are for breaches of an implied warranty and an implied warranty of fitness, we find that the Association's claims are indistinguishable from a claim for a breach of an implied warranty of habitability. The trial court reached the same conclusion and granted

summary judgment on these claims, concluding that they were barred by the holding in *American Towers*. In *American Towers* the supreme court specifically refused to extend such claims to the purchasers of condominiums. *See American Towers*, 930 P.2d at 1193–1194; *see also Maack*, 875 P.2d at 582.

¶ 29 The Association attempts to distinguish *American Towers*, arguing that *American Towers* dealt with the implied warranty of habitability and the Association is pressing a different claim. The Association argues that the implied warranties stem from the Condominium Act and as *American Towers* did not address this issue, this case is distinct. The Association cites *Brickyard Homeowners' Association Management Committee v. Gibbons Realty Co.*, 668 P.2d 535 (Utah 1983), for the proposition that the Utah Supreme Court permitted an action for "implied warranty of fitness to go forward." The Association misreads *Brickyard*. In *Brickyard*, the association sued for several causes of action, including breach of an "implied warranty of fitness for proper use" of two units and fresh water ponds. *Id.* at 536. The only issue discussed by the supreme court on the interlocutory appeal was the propriety of an association suing on behalf of its members under the Condominium Act. *See id.* at 542 ("Defendants' only objection to this claim is that the management committee 'does not have an enforceable interest in this claim.' "). The supreme court then remanded the case to allow the association to pursue its claims in the trial court. *See id.* at 543. Thus, *Brickyard* stands only for the proposition that the Association may properly bring a claim, in this case a claim for a breach of an implied warranty, on behalf of its individual members, and not for the propriety of the breach of habitability claim itself.

¶ 30 *American Towers* is dispositive. Utah does not recognize a claim for a breach of the implied warranty of habitability in the context of purchasers of residential property. *See American Towers*, 930 P.2d at 1193–1194; *Maack*, 875 P.2d at 582–83. The Association has failed to demonstrate that its implied warranty claims differ from a claim for breach of implied warranty of habitability. Therefore, we affirm the trial court's grant of summary judgment to Davis on these claims.[5]

## CONCLUSION

¶ 31 The Association's negligence claim is barred by the economic loss rule. Similarly, the Association's claim of strict liability fails because no injury to person or property has occurred. The contracts between the parties provided no express warranties, and the Condominium Act does not provide the Association with a cause of action. Utah does not recognize a claim for implied warranty of habitability in real property sales. Therefore, the trial court correctly dismissed the Association's tort claims and granted summary judgment on the Association's claims for breach of express and implied warranties. Consequently, we affirm the trial court's grant of Davis's motion to dismiss the tort claims and motion for summary judgment.

¶ 32 WE CONCUR: JUDITH M. BILLINGS and WILLIAM A. THORNE, JR., Judges.

---

5. We note that in the present case, because the contractual claims fail and tort law does not recognize a cause of action to recover economic losses, the Association is left without a remedy. This result is not inconsistent with the policies outlined by the cases we have cited defining the economic loss rule:

When a product does not perform or last as long as the consumer thinks it should, the claim pertains to the quality of the product as measured by the buyer's and user's expectations—expectations which emanate solely from the purchase transaction.... Builders who construct low quality housing that does not cause injury to persons or property may still be held liable for damages, but that liability should be defined by the contract between the parties. The law of torts imposes no standards on the parties' performance of the contract; the only standards are those agreed upon by the parties.

*American Towers*, 930 P.2d at 1190. In the present case, the individual condominium owners could have bargained for a warranty to cover any defects in the original construction, but having failed to do so cannot look beyond their agreement for a remedy.