2001 UT 76

**Cody E. BEARDEN, Plaintiff and Appellant,**

v.

**Wayne E. CROFT and Brian C. Golsan, a minor, Defendants and Appellees.**

**No. 990346.**

Supreme Court of Utah.

Aug. 21, 2001.

Kendall S. Peterson, Salt Lake City, for plaintiff.

Robert W. Hughes, Salt Lake City, for defendants.

HOWE, Chief Justice:

¶ 1 Plaintiff Cody E. Bearden appeals from a summary judgment denying him recovery from defendant Wayne E. Croft for injuries sustained in an accident caused by a minor operating a Waverunner owned by Croft.[1]

¶ 2 Plaintiff's father, Vandee Bearden, performed cement work for Croft in exchange for the use of Croft's two Waverunners. When he went to Croft's home to pick up the Waverunners, Croft began showing him how to operate them. Bearden interjected that he was not going to operate the Waverunners and that "my kids know how to operate them." Croft made no response to that remark, and nothing more was said as to who was allowed to operate them.

¶ 3 At Deer Creek State Park, Vandee Bearden permitted his son, plaintiff Cody Bearden, who was over the age of twenty-one, to operate one of the Waverunners and Brian Golsan, a thirteen-year-old friend, to operate the other Waverunner. Golsan ran his Waverunner into plaintiff, who sustained a broken hip. Plaintiff subsequently brought this action against Golsan and Croft. The liability claim against Croft was based on his status as the owner of the Waverunner. Section 73–18–18 of the Utah Code makes the owner of a watercraft vicariously liable for the negligence of a minor operating it with the express or implied permission of the owner.

¶ 4 Croft moved for summary judgment against plaintiff Cody Bearden and also against third-party defendant Vandee Bearden for indemnification. The trial court denied the motion. However, four days before trial, the judge, *sua sponte*, reconsidered Croft's motion for summary judgment, vacated his previous order, and granted the motion. In its order of dismissal, the court held that "[a]s a matter of law, Croft did not give Golsan express or implied consent or permission to operate the Waverunners so as to impose liability against Croft under Utah Code Ann. § 73–18–18." The judge explained that section 73–18–18 "does not go far enough to cover a third party such as Mr. Golsan is in this matter."

## STANDARD OF REVIEW

¶ 5 Summary judgment is granted only when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). In reviewing a grant of summary judgment, an appellate court views "the facts in a light most favorable to the losing party below" and gives "no deference to the trial court's conclusions of law: those conclusions are reviewed for correctness." *Blue Cross & Blue Shield v. State,* 779 P.2d 634, 636–37 (Utah 1989). Correctness is also the standard for review of questions of statutory interpretation. *See Stephens v. Bonneville Travel, Inc.,* 935 P.2d 518, 519 (Utah 1997).

## ANALYSIS

¶ 6 Plaintiff's action against Croft is based on section 73–18–18 of the Utah Code, which provides:

The owner of a vessel shall be liable for any injury or damage occasioned by the negligent operation of such vessel, by a minor under the age of 18 years operating such vessel with the express or implied

---

1. A "Waverunner" is a small-motored watercraft that holds one to three people and is often operated at fairly rapid speeds. It is similar to a snowmobile, but is used in water rather than in snow.

consent of the owner, whether under the laws of this state or by neglecting to observe such ordinary care and such operation as the rules of common law require. Utah Code Ann. § 73–18–18–(1989).

¶ 7 We note at the outset that the statute, which imposes liability on the owner of a vessel for its negligent operation by a minor operating it with the express or implied consent of the owner, is identical in purpose and similar in wording to section 53–3–212(1) of the Utah Code. The latter statute imposes liability upon the owner of a motor vehicle for the negligent operation of it by a minor when the owner has caused or knowingly permitted the minor to operate it. We have decided a number of cases under section 53–3–212(1), and reference to that statute and those cases is therefore helpful in our analysis here. At least one other state in interpreting its owner-consent boating statute has looked to its statute imposing vicarious liability on automobile owners for negligent use by minors. *See Gunn v. Booker,* 259 Ga. 343, 381 S.E.2d 286, 288–89 (1989). Although not important to our analysis here, the two Utah statutes do contain some different language. Section 73–18–18 provides only for the vicarious liability of the owner of the vessel, whereas section 53–3–212(1) imposes liability on both the owner of a motor vehicle causing or knowingly permitting a minor to drive it and on any person who gives or furnishes a motor vehicle to the minor. Both persons are jointly and severally liable with the minor for any damage caused by the negligence of the minor operator.

■ ¶ 8 The central question in this appeal is whether Brian Golsan was operating the Waverunner at the time of his accident with the plaintiff with the "express or implied consent" of Croft. In two cases arising under section 53–3–212(1), the automobile statute, we have had occasion to comment on the proof necessary to establish consent of the owner. In *Lowder v. Holley,* 120 Utah 231, 233 P.2d 350, 353 (1951), we observed that

the obvious intent of the legislature was to protect innocent third parties from the negligence of minors to whom cars are furnished or who are permitted by the owners of the cars to drive them, by hold-ing the owners responsible therefor. In most instances, actual permission by the owner to the minor to drive the car is impossible of direct proof. It is, of course, in the interest of the owner after an accident, to deny such permission. It is not necessary, therefore, in order for a plaintiff to establish a case against an owner of a car to prove that express consent to drive the car was given to the minor. It may be implied from past conduct.

In that case, a father and truck owner testified that he had not at any time given his sixteen-year-old daughter permission to drive the truck. The daughter corroborated that refusal and testified that on the occasions when she had asked for permission, her father had refused because she did not have a driver's license. However, there was evidence that the daughter had learned to drive a car about four years previously and that she had driven the truck involved in the subject collision on a number of occasions. The truck was left at home in the driveway near the street on the day of the accident. No keys were needed to start the truck. All that was needed was to turn on the ignition switch. Two officers who investigated the accident testified that both the father and the daughter told them the father knew she drove the truck and that he allowed her to do it. Under these facts, this court held that the trial court as finder of the facts was fully justified in concluding that the daughter was driving the truck at the time of the accident with the implied consent, permission, and knowledge of her father. We observed that there was evidence that the daughter had driven the truck on a number of occasions, and it was reasonable to conclude that her father could not fail to be aware of such conduct. Because no action was taken to stop this driving, it can be assumed that it was done with the father's consent.

¶ 9 Two years later, we decided *Mugleston v. Glaittli,* 123 Utah 238, 258 P.2d 438 (1953). In that case, a father owned an automobile and a panel truck. Upon leaving home one evening with his wife, he warned his fifteen-year-old son to leave the vehicles alone except to drive them from the street into the yard and to particularly not get any "bright

or funny ideas" about driving them elsewhere. When the father left, the son drove the car into the yard but departed on a joy ride with some friends in the panel truck. An accident occurred in which the plaintiff, one of the son's friends, was injured. At trial, there was testimony to the effect that the father had in the past allowed his son to drive his car around the neighborhood. The trial court awarded judgment against the father upon the theory that anyone who negligently leaves his automobile where it is available to a minor under sixteen is absolutely liable for any injuries caused by the minor while driving.

¶ 10 Upon appeal, this court reversed the judgment, noting that there was no evidence that the owner caused or knowingly permitted the operation of the truck by his son, but, in fact, the owner had expressly forbidden his son to drive the vehicle. We further stated that the authorization to drive the vehicles into the yard cannot be construed to be general permission to use the vehicles in any other manner or for any other purpose.

¶ 11 Trials were held in the aforementioned two cases and the facts were fully developed. The instant case was decided on a motion for summary judgment filed by Croft and supported by his affidavit in which he averred that when he loaned the Waverunners to Vandee Bearden, Bearden did not indicate to him that plaintiff would operate a Waverunner, that Croft was not present when the accident happened, and that at no time had he consented to Golsan's use or operation of a Waverunner. The affidavit is silent as to what was actually said by and between Croft and Vandee Bearden when Bearden took the vessels from Croft's home.

¶ 12 In opposition to Croft's motion for summary judgment, plaintiff presented the affidavit of Vandee Bearden in which he averred that when he picked up the Waverunners from Croft, Croft asked him if he had ever operated a Waverunner. Vandee told him that he had not. The affidavit continues:

Mr. Croft proceeded to explain how to start up the wave runners and was giving me some instruction on how to ride them. I interrupted him and told him that I wasn't going to ride the wave runners and that I did not like that kind of recreation. I did, however, tell him that my kids were going to ride the wave runners, and I thought they knew how to operate them.

At no time did Mr. Croft in any way limit or restrict who would operate the wave runners. He made no statement as to whether minors were to be allowed to operate them or not. Had he told me that he would not permit minors to operate the wave runners, I would not have taken them. It would not have been worth while to take the wave runners if minors could not operate them because I was getting the wave runners primarily so my stepson, Adam Park, who was fourteen, could ride them.

I do not recall giving Croft any information about our destination, about who would operate the wave runners other than telling him that I thought my kids would enjoy them.

No counter affidavit was filed by Croft.

¶ 13 Thus there was no evidence before the trial court that Croft had given his express consent for either plaintiff or Golsan to operate the Waverunners. However, section 73–18–18 imposes liability upon the owner of a vessel operated by a minor with the express *or implied consent* of the owner. Croft did not dispute the averment of Vandee Bearden that he told Croft that he would not operate the Waverunners and that "my kids" were going to ride them, and "I thought they knew how to operate them."

¶ 14 Furthermore, Croft does not assert that he made any response to Bearden's remarks. Thus, a factual question was presented as to the breadth of the implied consent given by Croft when he did not respond. The reference by Vandee Bearden to "my kids" is indefinite. One of his "kids" was the plaintiff, who was over the age of twenty-one. Another "kid" was his stepson, who was fourteen and who Bearden had the unexpressed intention of allowing to operate one of the Waverunners. Golsan was not a son of Bearden, but apparently a friend of Bearden's children and accompanied them to the reservoir where they rode the Waverunners. Because Croft made no response to Bearden's

statement as to who would be operating the Waverunners, a factual question is presented as to the scope of Croft's implied consent. Croft points out that he did not know Golsan, that Golsan's name was not mentioned, and that Golsan was not individually identified to Croft as a potential operator. However, acquaintance with Golsan and his specific identification as a possible operator may not be necessary to find implied consent. A fact finder could find "my kids" to have one of various meanings, including one which would or would not include Golsan. On the limited record before us as to what was said by and between Bearden and Croft, the bounds of the implied consent given by Croft cannot be stated as a matter of law. As in *Lowder, supra* ¶ 8, a factual issue is presented as to the existence and scope of any implied consent. This is in accord with the general rule that "[t]here is no formula which will aid the courts in deciding whether a motor vehicle was operated with the implied permission or consent of the owner, but it is rather a question of fact for the jury, unless the evidence is such that only one reasonable conclusion is deductible therefrom." 8 Am. Jur.2d *Automobiles and Highway Traffic* § 733 (1997). The summary judgment must be and is reversed and the case is remanded for the trier of the fact to make the factual determinations.

¶ 15 Plaintiff has cited to us cases from other jurisdictions which hold that a permittee driver of a motor vehicle may in some instances designate a subpermittee driver and the owner remains liable for the negligence of the subpermittee. Some of those cases arise under omnibus clauses of insurance policies. Other cases so holding arise under mandatory liability insurance statutes. In those cases where courts have broadly extended coverage to subpermittees, other and different considerations enter into the analysis. In the instant case, we are constrained by the specific words of section 73-18-18 that owners of vessels are to be held liable only when they have given express or implied consent to minors to operate their vessels. As explained above, we view the statute as creating primarily a question of fact in each instance. Until that determination is made in this case, it would be prema-

ture for this court to rule on whether in cases arising under section 73-18-18 a permittee operator can designate a subpermittee operator and hold the owner liable for the latter's negligence.

WILKINS, Justice, concurring in the result:

¶ 16 This is the first case to reach us arising from application of the boat owner liability statute found in section 73-18-18, and specifically regarding the scope of the words, "with the ... implied consent of the owner" as used in the statute. I agree with the lead opinion's conclusion that the information presented by affidavit and otherwise to the trial court was insufficient to know, as a matter of law, that Mr. Croft did not give his implied consent for use of the vessel by persons of Mr. Bearden's choosing—minors and adults—so as to include Mr. Golsan. I, too, believe that there remains a material, contested issue of fact on that point that prevents the granting of summary judgment at this stage of the proceedings.

¶ 17 I write separately to caution against the blanket application of cases decided under the motor vehicle liability statutes. While it is true, as the lead opinion notes, that we have decided a number of cases under section 53-3-212(1) addressing the scope of liability accruing to a motor vehicle owner for the "causing or knowingly permitting" a minor to operate a motor vehicle, the language of the watercraft owner's liability statute in question in this case is different, turning on whether a minor operated the "vessel with the express or implied consent of the owner." Utah Code Ann. § 73-18-18 (1989). The language of the two statutes is not the same, and I do not read them as being "similar" as suggested by the lead opinion. I see them as very different legal standards, requiring both different factual inquiry and different considerations of the fair import of the facts presented.

¶ 18 In essence, I agree with the main opinion that the central question is whether the minor operator of the vessel had the "express or implied consent" of the owner to operate the Waverunner at the time of the

accident, and that summary judgment is inappropriate given the facts before the trial court. I agree that the finder of fact, at trial, may well be able to discern the scope of Mr. Croft's consent, express or implied, if any, as it considers the evidence. I also agree that the only thing we can or should do is to remand the case for proper determination of those facts.

¶ 19 I do not agree that the automobile liability statute and cases reviewed by the main opinion aid in that effort. In fact, I believe that the differences in statutory language make reliance upon the reasoning and interpretations of the motor vehicle liability cases potentially quite misleading.

DURHAM, Justice, concurring in the result and dissenting:

¶ 20 The trial judge in this case held that, as a matter of law, (1) "Croft did not give Golsan express or implied consent or permission to operate the waverunners so as to impose liability against Croft under [the statute]," and (2) "[the statute] does not go far enough to cover a third party such as Mr. Golsan is in this matter." The lead opinion rejects the trial court's first ruling, determining that whether Croft gave Golsan express or implied permission is a jury question and not properly one of law. I do not disagree with that assessment, but cannot join in the lead opinion's failure to analyze the statute. The trial judge's holding that section 73–18–18 does not extend owner liability to a scenario involving a subpermittee such as Golsan was a legal determination of the meaning of the statute, which I believe this court must review before remanding.

¶ 21 Absent a holding from this court on the scope of the statute (a question of first impression in Utah), the trial judge on remand will be unable to provide the trial jury with correct instructions on the law. The jury's choices will include at least the following options:

1. to find that Croft did give Golsan implied or express permission to operate the Waverunners, and is therefore subject to owner's liability under the statute; OR

2. to find that Croft did not give Golsan implied permission, but that he did give Vandee Bearden express or implied consent for Bearden's "kids," including his minor stepson Cody, to use the Waverunners, *and*

   a. such permission was limited to the direct permittee (Cody) under the statute, and not to the sub-permittee (Golsan), thereby precluding liability; OR

   b. such permission extended as a matter of law under the statute to the sub-permittee (Golsan), whose use was authorized by the direct permittees (Vandee and Cody), thereby permitting liability; OR

3. to find that Croft did not give Golsan *or* Vandee Bearden any kind of permission for anyone other than Vandee himself to operate the Waverunners, and the statute does not extend owner liability to any sub-permittees, including Cody and Golsan, resulting in no liability.

¶ 22 In other words, under any factual scenario except the first, the jury will have to be instructed on the effect of the statute before it will be able to determine whether Croft has any liability. Therefore, I disagree with the lead opinion's conclusion that our construction of the statute would be premature at this time; we should undertake that task before remand.

DURRANT, Justice, dissenting:

¶ 23 I respectfully dissent from Chief Justice Howe's opinion. I disagree with the decision to remand for a determination of whether Golsan operated the Waverunner with Croft's implied consent. The evidence in the record relevant to the issue of implied consent has been adequately developed and is undisputed. Summary judgment was properly granted because reasonable inferences that may be drawn from the undisputed facts do not present a genuine issue as to implied consent for trial. To conclude that Golsan operated the Waverunner with Croft's implied consent, a jury would have to infer not only that Croft's silence meant approval, but also that Bearden's use of "my kids"

encompassed Golsan. Although the first inference is reasonable, the second is not.

¶ 24 A party facing a motion for summary judgment must bring forward specific evidentiary facts showing that there is a genuine issue for trial. *Badger v. Brooklyn Canal Co.*, 922 P.2d 745, 752 (Utah 1996); Utah R. Civ. P. 56(e). Bearden produced no evidence suggesting that "my kids" might refer to anyone other than Bearden's children. Golsan was not one of Bearden's children, but apparently a friend of Bearden's children. In short, because Golsan did not operate the Waverunner with Croft's express or implied consent, I would affirm the district court's grant of summary judgment in favor of Croft.

¶ 25 I also wish to note that I share Justice Wilkins' concern that, given the substantial differences in language between the two statutes, we should be cautious in relying on cases construing section 53–3–212 to interpret section 73–18–18.

¶ 26 Associate Chief Justice RUSSON concurs in Justice DURRANT's dissenting opinion.