2003 UT App 291

James Ashley FENNELL II,
Plaintiff and Appellant,

v.

Edward D. GREEN; Neil Wall aka Neil J. Wall; and GMW Development, Inc. dba Ivory North, Defendants and Appellees.

No. 20011029–CA.

Court of Appeals of Utah.

Aug. 21, 2003.

Lavar E. Stark and Frank M. Wells, Ogden, for Appellant.

Paul M. Belnap, Andrew D. Wright, Byron G. Martin, Strong & Hanni, Brandon B. Hobbs, Christian S. Collins, Elizabeth A. Hruby–Mills, Richards Brandt Miller & Nelson, Barbara K. Berrett, and Kumen L. Taylor, Berrett & Associates LC, Salt Lake City; and David R. Hamilton, Smith Knowles & Hamilton, PC, Ogden, for Appellees.

Before JACKSON, P.J., and BILLINGS, Associate P.J., and GREENWOOD, J.

## OPINION

GREENWOOD, Judge:

¶ 1 James Ashley Fennell II appeals the trial court's grant of summary judgment in favor of defendants Edward D. Green, Neil Wall, and GMW Development, Inc., dba Ivory North (Ivory North) (collectively, Defendants). We affirm.

## BACKGROUND

¶ 2 Green and Wall were partners in development of the Falcon Ridge Subdivision (the Subdivision) in Layton, Utah, which included lot 31. Layton City required a soils report to be conducted on the Subdivision prior to its development. Green and Wall hired Glenn R. Maughan to conduct the required soils report. The soils report was completed October 7, 1992, with additional testing completed on lot 31 and reported on October 9, 1992. Maughan's October 9 soils report stated that a scarp existed "on the north 20 feet of Lot # [31]," which was determined to be a landfall. Maughan recommended that "the road right-of-way to Beech Adams be placed along the inside of the fence ... [which] would reduce the slope to Kays Creek ... [and that] a 45–degree angle would be sufficient ... [but that] a 15–degree safety factor is recommended." Maughan's report was filed with Layton City and available for public inspection. Bill Flanders, the Layton City engineer, reviewed the soils report and determined that Green and Wall had "complied with all of the necessary regulations and standards to gain approval from Layton City for the Falcon Ridge Subdivision." Subsequently, Layton City approved the Subdivision for residential building.

¶ 3 Ivory North is a real estate developer. Fennell expressed interest in Ivory North constructing a home for him on lot 31. On May 18, 1995, Fennell entered into an agreement with Ivory North for the purchase of a home to be built on lot 31 of the Subdivision. Pursuant to the agreement, Ivory North purchased lot 31 from Wall and Green. Fennell had no contact with Wall and Green. Ivory

North then built a home on lot 31 and transferred title to Fennell on December 22, 1995. In April 1998, a landslide occurred on lot 31. No one was injured and the only damage was to landscaping.[1] However, Fennell claims the value of lot 31 greatly decreased because of the landslide.

¶ 4 On April 7, 2000, Fennell filed a complaint against Green, Wall, and Ivory North alleging intentional failure to disclose, negligent failure to disclose, and breach of an implied warranty. All Defendants filed motions for summary judgment. After a hearing, the trial court granted Defendants' motions for summary judgment based on (1) Fennell's failure to comply with rule 4–501(2)(B) of the Utah Rules of Judicial Administration by not specifically controverting the facts as set forth by Defendants in the memoranda in support of their motions for summary judgment, (2) Fennell's failure to establish that any of the Defendants knew lot 31 was susceptible to landslides, (3) the economic loss rule, and (4) Utah's refusal to recognize implied warranties for residential property.

¶ 5 This appeal followed.

## ISSUE AND STANDARD OF REVIEW

¶ 6 Fennell appeals, claiming the trial court erred in granting Defendants' motions for summary judgment. "Summary judgment is granted only when 'there is no genuine issue as to any material fact' and 'the moving party is entitled to a judgment as a matter of law.'" *Bearden v. Croft*, 2001 UT 76, ¶ 5, 31 P.3d 537 (quoting Utah R. Civ. P. 56(c)). "In reviewing a grant of summary judgment, [this court] . . . gives 'no deference to the trial court's conclusions of law: those conclusions are reviewed for correctness.'" *Id.* (quoting *Blue Cross & Blue Shield v. State*, 779 P.2d 634, 636–37 (Utah 1989)).

## ANALYSIS

### I. Rule 4–501(2)(B)

¶ 7 Fennell appeals the trial court's grant of summary judgment in favor of Defendants based on his failure to comply with rule 4–501(2)(B) of the Utah Rules of Judicial Administration. At the time the motions for summary judgment were filed, rule 4–501(2)(B) stated:

> The points and authorities in opposition to a motion for summary judgment shall begin with a section *that contains a concise statement of material facts as to which the party contends a genuine issue exists* . . . . Each disputed fact shall be stated in separate numbered sentences and shall specifically refer to those portions of the record upon which the opposing party relies and, if applicable, shall state the numbered sentence or sentences of the movant's facts that are disputed. *All material facts set forth in the movant's statement and properly supported by an accurate reference to the record shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the opposing party's statement.*

Utah R. Jud. Admin. 4–501(2)(B) (amended November 2001) (emphasis added). It is clear that Fennell failed to comply with the rule. He did not refer to Defendants' statements of uncontroverted facts, but instead included only his own statement of undisputed facts. As a result, it was unclear what facts Fennell contended were disputed.[2] However, Fennell argues that the trial court violated his substantive rights and abused its discretion when it required compliance with rule 4 501. Fennell cites *Scott v. Majors*, 1999 UT App 139, ¶ 12, 980 P.2d 214, as support for this contention. In *Scott*, this court stated that the Utah Rules of Judicial Administration "are not intended to, nor do they, create or modify substantive rights of litigants, nor do they decrease the inherent

---

1. However, in his motion in opposition to summary judgment, Fennell alleges that there was also damage to a wall.

2. The trial court noted its frustration with Fennell's reply memoranda to Defendants' motions for summary judgment. The court asked why Fennell's counsel failed to follow rule 4–501 in "responding to the summary judgment?" Fennell's counsel admitted that he may have been "deficient" in following rule 4–501.

power of the court to control matters pending before it." *Id.*

¶ 8 The Utah Supreme Court, however, recently emphasized the importance of compliance with the Rules of Judicial Administration in *Lovendahl v. Jordan School District,* 2002 UT 130, 63 P.3d 705.[3] In *Lovendahl,* the plaintiff sued for damages under a claim for inverse condemnation. *See id.* at ¶ 48. The defendant's summary judgment motion and supporting memorandum included facts and arguments that the plaintiff, in opposing the summary judgment motion, did not address. *See id.* at ¶ 50. The court noted that under rule 4–501(2)(B) "all facts set forth in the movant's statement of facts are 'deemed admitted for the purpose of summary judgment unless specifically controverted by the opposing party's statement.'" *Lovendahl,* 2002 UT 130 at ¶ 50, 63 P.3d 705 (quoting Utah R. Jud. Admin. 4–501(2)(B)). Because the plaintiff did not specifically controvert the facts outlined in the defendant's motion for summary judgment, the court rejected the plaintiff's claim that there was insufficient evidence to support summary judgment. *See id.*

■■■ ¶ 9 In addition, the trial court has discretion in requiring compliance with rule 4–501. *See Hartford Leasing Corp. v. State,* 888 P.2d 694, 701–02 (Utah Ct.App.1994) (upholding trial court's exercise of discretion in refusing to accept supplemental memoranda outside bounds of rule 4–501). Utah courts have repeatedly upheld the necessity of compliance with the Utah Rules of Judicial Administration. *See id.; see also Golding v. Ashley Cent. Irrigation Co.,* 902 P.2d 142, 148 (Utah 1995) (determining that failure to comply with rule 4–501 made additional filings moot); *cf. Price v. Armour,* 949 P.2d 1251, 1255 (Utah 1997) (finding trial court erred in not complying with rule 4–501 but affirming because error was harmless); *Loporto v. Hoegemann,* 1999 UT App 175, ¶ 14,

982 P.2d 586 (reversing trial court where it did not follow notice requirement of rule 4–506 of the Utah Rules of Judicial Administration). *See generally Parker v. Dodgion,* 971 P.2d 496, 497 n. 3 (Utah 1998) (affirming trial court on other grounds but noting plaintiff's response to motion for summary judgment failed to conform with rule 4–501 because it failed to set forth disputed facts and did not contain numbered sentences). These cases establish that a trial court may exercise its discretion to require compliance with the Rules of Judicial Administration, particularly rule 4–501, without impairing a party's substantive rights. In this case, we do not believe the court abused its discretion in requiring compliance with rule 4–501 and thus ruling that the facts, as stated in Defendants' motions and supporting memoranda, were deemed admitted. We rely on those admitted facts in addressing the remaining issues raised by Fennell.

## II. Summary Judgment as to Green and Wall

### A. Fraudulent Nondisclosure

■■■ ¶ 10 Fennell argues that the trial court erred in granting Wall's and Green's motions for summary judgment as to Fennell's claim of fraudulent nondisclosure.[4] "To support a claim of fraudulent nondisclosure a plaintiff must prove the following three elements: (1) the nondisclosed information is material, (2) the nondisclosed information is known to the party failing to disclose, and (3) there is a legal duty to communicate." *Hermansen v. Tasulis,* 2002 UT 52, ¶ 24, 48 P.3d 235. Defendants do not argue that the possibility of landslides on lot 31 is not material information. Therefore, to decide whether Wall and Green acted fraudulently, it must be determined if any nondisclosed information was known to them and whether they had a legal duty to communicate the information to Fennell. *See id.*

---

3. *Lovendahl v. Jordan School District,* 2002 UT 130, 63 P.3d 705, is a plurality opinion with the Utah Supreme Court split on one issue. However, the section instructive as to this matter received majority support. *See id.* at ¶ 3.

4. Initially Fennell claimed damages under a claim of intentional nondisclosure. However, there is no such cause of action in Utah. The trial court interpreted Fennell's claim as one of fraudulent nondisclosure, and Fennell does not appeal this interpretation.

¶ 11 Given the uncontroverted facts, we determine that Fennell's fraudulent nondisclosure claim against Wall and Green fails because there were no facts presented to show that Wall or Green knew of a possible landslide condition on lot 31. Indeed, such knowledge was refuted by Maughan, who conducted the required soils report of lot 31 and stated in his deposition[5] that he did not believe that lot 31 was a landslide area:

Q. O.K. My question is: Was the area on the flat surface of [lot 31] stable as opposed to the bank itself where the stream had undercut it?

A. It was stable at that point, yes.

Q. And you felt there was not a slide in that area, that [the] stream had simply undercut it?

A. That's right. But to protect it we put the slope back so they—to allow for future sloughing.

Q. Okay. *So when you finished up your analysis of this subdivision, you did not believe this area was a slide area in any of the lots, and that the only area where there had been some movement was on lot [31], and that's because the stream had undercut the bank down below?*

A. *That's right.*

Q. Is that a fair statement?

A. Yes.

. . . .

Q. And that's what you've told us a few minutes ago in my question, that you found that area stable with only the exception of where the creek had undercut down by the bank below lot [31]?

A. Yes.

Q. And from that observation and opinion that you've made, *you determined that this was not a slide area but just an undercut by the creek, correct?*

A. *Yes.*

. . . .

Q. *So my question is: If you had some data or an opinion that this was a landslide area, you certainly would have put*

*that in your report and told somebody about it; is that true?*

A. *That's true.*

Furthermore, Bill Flanders, engineer for Layton City, stated in his affidavit[6] that after reviewing the Subdivision plans for compliance, he required Wall and Green to obtain a soils study for the Subdivision. After reviewing Maughan's soils report Flanders determined that Wall and Green "complied with all necessary regulations and standards to gain approval from Layton City for the Falcon Ridge Subdivision."

¶ 12 Because Fennell cannot establish that Wall and Green had knowledge of any such information, it necessarily follows that there can be no duty to disclose the information to either Ivory North or Fennell.

## B. Economic Loss Rule & Negligent Misrepresentation

¶ 13 We also determine that the trial court was correct in determining that the economic loss rule prevents Fennell from claiming economic damages under a claim of negligent misrepresentation. The economic loss rule prevents a party from claiming economic damages " 'in negligence absent physical property damage or bodily injury.' " *SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assoc., Inc.*, 2001 UT 54, ¶ 32, 28 P.3d 669 (citation omitted). Economic loss is defined as

"[d]amages for inadequate value, costs of repair and replacement of the defective product, or consequential loss of profits without any claim of personal injury or damage to other property . . . as well as 'the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold.' "

*Id.* (alteration in original) (quoting *American Towers Owners Ass'n, Inc. v. CCI Mech., Inc.*, 930 P.2d 1182, 1189 (Utah 1996) (quoting *Maack v. Resource Design & Constr., Inc.*, 875 P.2d 570, 579–80 (Utah Ct.App. 1994))).

---

5. This deposition excerpt was referred to by Wall and Green as support for their statements of undisputed facts.

6. Flanders's affidavit also supported Wall's and Green's statements of undisputed facts.

¶ 14 The economic loss rule was applied in *American Towers* where condominium homeowners brought suit against contractors for faulty construction in the plumbing and mechanical systems. *See* 930 P.2d at 1184. The homeowners were not parties to any of the construction contracts and had no enforceable rights as special beneficiaries. *See id.* at 1187. The court barred the homeowners from collecting for losses under the economic loss theory, determining that any other holding would "impose the [homeowners'] economic expectations upon parties whom the [homeowners] did not know and with whom they did not deal and upon contracts to which they were not a party." *Id.* at 1192.

¶ 15 As in *American Towers,* Fennell's claim for recovery for negligent nondisclosure is barred by the economic loss rule because "economic damages are not recoverable in negligence absent physical property damage or bodily injury."[7] *Id.* at 1189. Similar to the homeowners in *American Towers,* Fennell did not have a contractual relationship with Wall and Green; thus, the economic loss rule applies to prevent the imposition of "economic expectations" on non-contracting parties. *Id.* at 1192. Therefore, the trial court was correct in granting Wall's and Green's motions for summary judgment as to Fennell's claim of negligent misrepresentation.[8]

### C. Breach of Implied Warranty

¶ 16 Fennell also appeals the grant of summary judgment in favor of Wall and Green on Fennell's breach of implied warranty claim. However, Utah does not recognize a cause of action for breach of an implied warranty of habitability for residential property. As stated in *American Towers Owners Ass'n, Inc. v. CCI Mechanical, Inc.,* 930 P.2d 1182 (Utah 1996), a breach of an implied warranty of habitability has not been extended to purchasers of residential property. *See id.* at 1193–94. The policy for refusing such a claim was explained by the supreme court:

> The purchaser has the right to inspect the house before the purchase as thoroughly as that individual desires, and to condition purchase of the house upon a satisfactory inspection report. Further, if there are particular concerns about a home, the parties can contract for an express written warranty from the seller. Finally, if there are material latent defects of which the seller was aware, the buyer may have a cause of action in fraud. Therefore, the circumstances presented to the purchaser of a residence are not closely analogous to those of a relatively powerless lessee....

*Id.* at 1193 (emphasis omitted) (quoting *Maack v. Resource Design & Constr., Inc.,* 875 P.2d 570, 582–83 (Utah Ct.App.1994)); *see also Snow Flower Homeowners Ass'n v. Snow Flower, Ltd.,* 2001 UT App 207, ¶ 30, 31 P.3d 576 (following *American Towers* holding that "Utah does not recognize a claim for a breach of the implied warranty of habitability in the context of purchasers of residential property"). Consequently, the trial court

---

**7.** Two recent Utah Supreme Court cases have interpreted the economic loss rule. However, they are not applicable here and can be distinguished. *Grynberg v. Questar Pipeline Co.,* 2003 UT 8, 70 P.3d 1, interprets Wyoming law and its economic loss rule. *See id.* at ¶¶ 39, 40–44 (determining that Wyoming had adopted the economic loss rule). *Hermansen v. Tasulis,* 2002 UT 52, 48 P.3d 235, involves a suit brought by purchasers against their real estate agent regarding knowledge of land stability. *See id.* at ¶¶ 3, 5. This case can be distinguished from the claim against Wall and Green because in *Hermansen* the defendants had an independent duty to plaintiffs as real estate professionals. *See id.* at ¶ 23.

**8.** Fennell argues that the economic loss doctrine does not apply to Wall and Green because the "injury or damage [was] to other property." Fennell's argument fails because in *American*

*Towers Owners Ass'n, Inc. v. CCI Mech., Inc.,* 930 P.2d 1182 (Utah 1996) the Utah Supreme Court defined "other property" in construction projects as including parts such as " 'land, design services, and construction of a dwelling,' " determining that the failure of one part, even if it causes " 'a diminution of the value of the whole,' " is " 'purely economic loss.' " *Id.* at 1191 (quoting *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.,* 236 Va. 419, 374 S.E.2d 55, 58 (1988) (upholding summary judgment for architect and pool designer who had no contract with buyer, where pool was built on unsettled ground which caused broken pipes and broken foundation)). Therefore, where the damaged property, the land, was part of the "package" Fennell contracted for, he cannot argue it is "other property" for the purpose of establishing an exception to the economic loss rule.

correctly granted summary judgment as to Fennell's breach of warranty claim.

### III. Summary Judgment for Ivory North

#### A. Fraudulent Nondisclosure & Negligent Misrepresentation

 ¶ 17 As stated above, "[t]o support a claim of fraudulent nondisclosure a plaintiff must prove the following three elements: (1) the nondisclosed information is material, (2) the nondisclosed information is known to the party failing to disclose, and (3) there is a legal duty to communicate." *Hermansen v. Tasulis*, 2002 UT 52, ¶ 24, 48 P.3d 235. Similarly, an effective claim for negligent misrepresentation requires that the party making the misrepresentation was in a superior position to know of the material fact. *See Price–Orem Invest. Co. v. Rollins, Brown & Gunnell, Inc.*, 713 P.2d 55, 59 (Utah 1986). As with Wall and Green, the trial court was correct in granting Ivory North's Motion for Summary Judgment, as the undisputed facts establish that Ivory North had no knowledge that lot 31 was subject to landslides. There are no facts presented that Ivory North was told of a landslide condition by either Wall or Green, or that Ivory North determined, or should have determined, that fact for itself. Furthermore, Fennell admits in his complaint that Ivory North did not know about the landslide conditions of lot 31, stating:

27. Defendant Green and Wall partnership did not disclose to potential purchasers of the lot the geologist reports and geological hazards of Lot 31 on the Subdivision Plat.

28. Defendant Green and Wall partnership did not disclose to potential purchasers of the lot the geologist reports and geological hazards of Lot 31 in the protective covenants.

29. Defendant Green and Wall partnership did not disclose geological hazards of Lot 31 in the contract of sale to Defendant [Ivory North].

30. Defendant Green and Wall partnership did not disclose geological hazards of Lot 31 in the deed of conveyance to [Ivory North].

Because Fennell cannot establish that Ivory North had any knowledge it was required to disclose the trial court correctly granted summary judgment in favor of Ivory North on this claim.

#### B. Breach of Implied Warranty

 ¶ 18 Fennell had a contract with Ivory North for the purchase of lot 31. However, Fennell failed to contract with Ivory North for a warranty against future landslides. Furthermore, the Real Estate Purchase Contract between Ivory North and Fennell expressly excludes any implied warranties:

Except for the [IVORY NORTH] WARRANTY and SELLER's obligation to repair or replace WALK–THROUGH ITEMS: (a) *SELLER conveys the PROPERTY to BUYER, "AS IS, WHERE IS," WITHOUT REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, HABITABILITY OR WORKMANSHIP;* (b) SELLER makes no representations or warranties to BUYER ... regarding the environmental condition of the PROPERTY (including the presence or freedom from radon, hazardous waste or hazardous materials); (c) SELLER expressly disclaims any other representations or warranties regarding the PROPERTY; (d) BUYER accepts the PROPERTY in the condition in which the PROPERTY exists on the CLOSING DATE....

In a similar case, *Tibbitts v. Openshaw*, 18 Utah 2d 442, 425 P.2d 160 (1967), the Utah Supreme Court affirmed the trial court's dismissal of an implied warranty claim where the purchase agreement between the two parties specifically excluded the claim. *See id.* at 161–62. Because an implied warranty of habitability is not extended to purchasers of residential property, and Ivory North specifically excluded the claim contractually, the trial court did not err in granting summary judgment as to this claim.

### CONCLUSION

¶ 19 First, Fennell failed, as required by rule 4–501(2)(B) of the Utah Rules of Judicial Administration, to specifically controvert De-

fendants' statements of undisputed facts and clearly identify undisputed facts in his reply memoranda to Defendants' motions for summary judgment. Therefore, the trial court did not exceed its discretion in determining that the facts as presented in Defendants' motions for summary judgment and supplemental memoranda were deemed admitted.

¶ 20 Second, the trial court properly granted summary judgment as to Fennell's claims against Wall and Green because (1) the undisputed facts establish that Wall and Green had no knowledge of potential landslide conditions on lot 31 that would impose a duty to disclose, (2) the economic loss rule is applicable and bars recovery for negligent misrepresentation, and (3) Utah law does not provide implied warranties for residential property.

¶ 21 Finally, the trial court properly granted summary judgment on Fennell's claims against Ivory North because (1) the undisputed facts established that Ivory North had no knowledge of potential landslide conditions, and (2) Fennell's contract with Ivory North expressly waived any implied warranties, including any warranty for the geological condition of lot 31.

¶ 22 Affirmed.

¶ 23 WE CONCUR: NORMAN H. JACKSON, Presiding Judge, and JUDITH M. BILLINGS, Associate Presiding Judge.