2006 UT App 222

**Steven WEST and Suzanne West, Plaintiffs and Appellants,**

v.

**INTER–FINANCIAL, INC.; and Badi Mahmood, Defendants and Appellees.**

No. 20050195–CA.

Court of Appeals of Utah.

June 2, 2006.

10. *Vestin Mortgage, Inc. v. First Am. Title Ins.*     *Co.,* 2004 UT App 379, ¶ 18, 101 P.3d 398.

David B. Hansen and Kevin A. Howard, Howard Phillips & Andersen, Salt Lake City, for Appellants.

M. David Eckersley, Prince Yeates & Geldzahler, Salt Lake City, for Appellees.

Before Judges BENCH, GREENWOOD, and BILLINGS.

## OPINION

GREENWOOD, Associate Presiding Judge:

¶ 1 Plaintiffs Steven and Suzanne West (the Wests) appeal the trial court's grant of Defendants' Motion for Judgment on the Pleadings. We reverse in part and affirm in part.

## BACKGROUND

¶ 2 Dave Szumigala and Ellen Daley (the Sellers) hired Defendant Inter–Financial, Inc. to appraise their Salt Lake City property. Andrew Schofield, an appraiser at Inter–Financial, appraised the property at $240,000. Schofield's supervisor at Inter–Financial, Defendant Badi Mahmood, approved the appraisal report. Schofield certified in his appraisal report that he performed the appraisal "in conformity with the Uniform Standards of Professional Appraisal Practice, adopted and promulgated by the Appraisal Standards Board of the Appraisal Foundation." *See* Utah Code Ann. § 61–2b–27 (Supp.2005). The Sellers accepted the Wests' offer to purchase the property for $220,000. The Sellers then authorized Schofield and Inter–Financial "to transfer the appraisal" to the Wests and the Wests' lending institution. At closing, the lending institution charged the Wests $150 for the appraisal report.

¶ 3 Thereafter, the Wests allegedly discovered that an error in the appraisal report overstated the property's square footage by 560 square feet, constituting approximately eighteen percent of the total size. The Wests subsequently brought an action against Inter–Financial and Mahmood for negligence, negligent misrepresentation, and breach of contract. They demanded $40,000 in damages, which represented the difference in the value of the property at its purportedly true square footage, based on comparable sales in the neighborhood. After hearing arguments, the trial court granted Defendants' motion for judgment on the pleadings. This appeal followed.

## ISSUE [1] AND STANDARD OF REVIEW

¶ 4 The Wests argue that the trial court erroneously barred their claims for negligence and negligent misrepresentation under the economic loss rule. "The grant of a motion for judgment on the pleadings is reviewed under the same standard as the grant of a motion to dismiss, i.e., we affirm the grant of such a motion only if, as a matter of law, the plaintiff could not recover under the facts alleged." *Golding v. Ashley Cent. Irrigation Co.*, 793 P.2d 897, 898 (Utah 1990). "[W]e take [the factual allegations in the complaint] as true and consider them and all reasonable inferences drawn therefrom in a light most favorable to the plaintiff." *Id.* And, "because our review concerns only questions of law, we review for correctness." *Straley v. Halliday*, 2000 UT App 38, ¶ 8, 997 P.2d 338.

## ANALYSIS

### I. Economic Loss Rule

¶ 5 The trial court held that under the economic loss rule, the Wests have no cause of action for purported negligence and negligent misrepresentation because they were not a party to the contract between the Sellers and Inter–Financial, and they suffered neither physical nor property damage. "The economic loss rule prevents a party from claiming economic damages 'in negligence absent physical property damage or bodily injury.' " [2] *Fennell v. Green*, 2003 UT App 291, ¶ 13, 77 P.3d 339 (quoting *SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*, 2001 UT 54, ¶ 32, 28 P.3d 669 (additional quotations and citation omitted)).

¶ 6 Outside of a products liability context, Utah first applied the economic loss rule in *American Towers Owners Ass'n v. CCI Mechanical, Inc.*, 930 P.2d 1182 (Utah 1996), to bar an owners association's tort claim against an architect for negligent design and construction. *See id.* at 1188, 1192. Similarly, in *SME Industries*, 2001 UT 54, 28 P.3d 669, the supreme court extended the scope of the economic loss rule to bar a steel subcontractor's negligence and negligent misrepresentation claims against design professionals. *See id.* at ¶¶ 38, 44. More recently, in *Fennell*, 2003 UT App 291, 77 P.3d 339, this court applied the holdings of *American Towers* and *SME Industries* to bar a property owner's negligent misrepresentation claims against real estate owners and developers under the economic loss rule. *See id.* at ¶ 13.

¶ 7 The Wests assert that the trial court erroneously applied the economic loss rule in light of *Hermansen v. Tasulis*, 2002 UT 52, 48 P.3d 235. In *Hermansen*, the supreme

---

1. The Wests also contend the trial court erred by dismissing their breach of contract cause of action. They argue that they and Inter–Financial had a contractual relationship because the Sellers assigned the appraisal contract to them with Inter–Financial's express knowledge.

   We determine the Wests have not stated a cause of action for breach of contract as a matter of law, and we therefore affirm the trial court's grant of judgment on the pleadings on this claim. It is well established that an assignor cannot assign rights he or she does not have. *See SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*, 2001 UT 54, ¶ 16, 28 P.3d 669 (explaining that if on remand the trial court found that an anti-assignment provision was not intended to prohibit assignment of a cause of action seeking money damages, then plaintiff's damages were limited only to those assignor could recover). Even if we assume the Sellers' transfer of the appraisal report to the Wests and the Wests' lending institution constituted an assignment of contractual rights, the Sellers cannot transfer the right to a cause of action they do not have. By the Wests' own admission, the Sellers could not have demanded economic damages because they had obtained a $30,000 windfall as a result of the purportedly incorrect appraisal. Thus, without a claim for damages, the Wests have no breach of contract action. *See Bair v. Axiom Design, L.L.C.*, 2001 UT 20, ¶ 14, 20 P.3d 388 (stating that "elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages").

2. The Utah Supreme Court has defined economic damages as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss or profits—without any claim of personal injury or damage to other property." *American Towers Owners Ass'n v. CCI Mech., Inc.*, 930 P.2d 1182, 1189 (Utah 1996) (additional quotations and citations omitted). Yet, "plaintiffs may recover purely economic losses in cases involving intentional torts such as fraud, business disparagement, and intentional interference with contract." *SME Indus.*, 2001 UT 54 at ¶ 34 n. 8, 28 P.3d 669 (quotations and citation omitted).

court recognized that "[w]hen an independent duty exists, the economic loss rule does not bar a tort claim 'because the claim is based on a recognized independent duty of care and thus does not fall within the scope of the rule.' " *Id.* at ¶ 17 (quoting *Town of Alma v. Azco Constr., Inc.*, 10 P.3d 1256, 1263 (Colo.2000)). To understand the significance of the supreme court's adoption of the independent duty of care outside the parameter of the economic loss rule, we must first examine the context and rationale underlying the economic loss rule.

¶ 8 Until *Hermansen*, the Utah Supreme Court's interpretation of the economic loss rule developed in the context of either products liability or construction and design. *See American Towers*, 930 P.2d at 1189–90; *SME Indus.*, 2001 UT 54 at ¶ 34, 28 P.3d 669. The supreme court noted that the economic loss rule is "particularly applicable" to construction and design situations because parties "can avoid economic loss" with contracts and are thus "free to adjust their respective obligations to satisfy their mutual expectations." *American Towers*, 930 P.2d at 1190. Therefore, "relief for defeated economic expectations ... was to come from the contract itself, not from third parties." *SME Indus.*, 2001 UT 54 at ¶ 35, 28 P.3d 669.

¶ 9 In *American Towers*, the supreme court rejected the owners association's breach of contract claim as intended third party beneficiaries to the construction contracts. *See* 930 P.2d at 1187–88. The court explained that "[t]o allow the claim would be to impose the [association's] economic expectations upon parties whom the [association] did not know and with whom they did not deal and upon contracts to which they were not a party." *Id.* at 1192.

¶ 10 Regardless of whether it was an owners association, as in *American Towers*, or subcontractors, as in *SME Industries*, who brought the negligence claim against architects,[3] the supreme court recognized that both "are akin to the types of commercial situations to which the economic loss rule was meant to apply." *SME Indus.*, 2001 UT 54 at ¶ 36, 28 P.3d 669. Indeed, " 'the economic loss rule was developed [for such situations,] to prevent disproportionate liability and allow parties to allocate risk by contract.' " *Id.* (quoting *Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1*, 124 Wash.2d 816, 881 P.2d 986, 990 (1994) (en banc)).

¶ 11 For the same reasons, the supreme court refused to apply Restatement section 552 to a negligent misrepresentation action against a construction or design professional for solely economic damages. *See id.* at ¶ 44, 881 P.2d 986 ("[T]o maintain the fundamental boundary between tort and contract law, we hold that when parties have contracted, as in the construction industry, to protect against economic liability, contract principles override the tort principles enunciated in section 552 of the Restatement (Second) of Torts and, thus, economic losses are not recoverable."); *see also* Restatement (Second) of Torts § 552 (1977).[4]

3. SME Industries also pursued an assigned breach of contract action against the defendant design team. *See SME Indus.*, 2001 UT 54 at ¶ 10, 28 P.3d 669. The court remanded this issue for the trial court to determine whether the parties intended an anti-assignment clause in the contract to include assignment of the contract as well as the assignment of the right to a cause of action for the breach of contract. *See id.* at ¶ 16.

4. Section 552 states:

(1) One who, in the course of his business, profession[,] or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable

care or competence in obtaining or communicating the information.
(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
  (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
  (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

## II. Adoption of Independent Duty in *Hermansen*

¶ 12 In *SME Industries,* the supreme court expressly limited the economic loss rule to bar tort actions against construction and design professionals, but left the door open for actions against other professionals. *See* 2001 UT 54 at ¶ 38 n. 9, 28 P.3d 669 (noting "that other courts dealing with this issue have concluded that professionals, such as attorneys, accountants, and health care providers, are distinguishable from architects, and that cases applying the economic loss rule in the construction setting do not signal in general the end of malpractice recovery in tort" (additional quotations and citations omitted)).

¶ 13 The supreme court further acknowledged, "that [it] has under certain circumstances recognized that economic losses [in other contexts] are recoverable in tort under section 552 [of the Restatement (Second) of Torts]." *Id.* at ¶ 41; *see also* Restatement (Second) of Torts § 552. For example, in *Price–Orem Investment Co. v. Rollins, Brown & Gunnell, Inc.,* 713 P.2d 55 (Utah 1986), the supreme court held that the plaintiff was not barred from pursuing its negligent misrepresentation action against a defendant surveyor even though the party was not in privity of contract. *See id.* at 59 ("Utah long ago acknowledged the tort of negligent misrepresentation, which provides that a party injured by reasonable reliance upon a second party's careless or negligent misrepresentation of a material fact may recover damages resulting from that injury when the second party had a pecuniary interest in the transaction, was in a superior position to know the material facts, and should have reasonably foreseen that the injured party was likely to rely upon the fact."). Similarly, in *Milliner v. Elmer Fox & Co.,* 529 P.2d 806 (Utah 1974), the supreme court held that a third party has an action in negligence against an accountant where the third party relied on the accountant's report, even though they were not in privity, where the accountant knew that the party would rely on the report for a particular purpose. *See id.* at 808 (stating that "lack of privity is not a defense where an accountant who is aware of the fact that his work will be relied on by a party or parties who may extend credit to his client or assume his client's obligations").

¶ 14 *Hermansen* provided Utah the first opportunity since *American Towers* to address the economic loss rule as it applied to professionals who were not engaged in construction or design. The Hermansens were home buyers who claimed that a listing real estate broker and the broker's agent negligently failed to disclose what they knew to be soil instability, which rendered the property sold to the Hermansens unsuitable for development. *See Hermansen v. Tasulis,* 2002 UT 52, ¶ 8, 48 P.3d 235.

¶ 15 In contrast to the plaintiffs in *American Towers* and *SME Industries,* the Hermansens did not bring a cause of action for breach of contract. *See id.* at ¶ 14; *American Towers Owners Ass'n v. CCI Mech., Inc.,* 930 P.2d 1182, 1187–88 (Utah 1996); *SME Indus.,* 2001 UT 54 at ¶ 10, 28 P.3d 669. Hence, their suit was not "against a seller where all respective rights of the parties are negotiated and risk appropriately designated in a written instrument." *Hermansen,* 2002 UT 52 at ¶ 14, 48 P.3d 235. Instead, there was a direct relationship between the "buyers, a real estate broker, and his agent who allegedly failed to properly discharge their professional duties." *Id.*

¶ 16 The Utah Supreme Court observed that although real estate agents are acting on behalf of a seller, their direct relationship with buyers requires them to "disclose facts materially affecting the value or desirability of the property that are known to [them]" for buyers "to make an informed decision whether to purchase." *Id.* at ¶ 20 (additional citations omitted) (quoting *Secor v. Knight,* 716 P.2d 790, 795 n. 1 (Utah 1986)). "Therefore, the initial inquiry in cases where the line between contract and tort blurs is whether a duty exists independent of any contractual obligations between the parties. When an independent duty exists, the economic loss rule does not bar a tort claim." *Id.* at ¶ 17. Thus, the supreme court allowed a cause of

Restatement (Second) of Torts § 552 (1977).

action to lie for a breach of duty that arose outside the written contract. *See id.* at ¶ 16 (citing *Grynberg v. Agri Tech, Inc.*, 10 P.3d 1267 (Colo.2000); *Town of Alma v. Azco Constr., Inc.*, 10 P.3d 1256 (Colo.2000)).[5]

¶ 17 The *Hermansen* Court further explained that

"information is given in the capacity of one in the business of supplying such information, that care and diligence should be exercised which is compatible with the particular business or profession involved. Those who deal with such persons do so because of the advantages which they expect to derive from this special competence. The law, therefore, may well predicate on such a relationship, the duty of care to insure the accuracy and validity of the information."

*Hermansen*, 2002 UT 52 at ¶ 21, 48 P.3d 235 (additional quotations and citation omitted) (quoting *Christenson v. Commonwealth Land Title Co.*, 666 P.2d 302, 305 (Utah 1983)).

■■■■ ¶ 18 Additionally, although " 'not occupying a fiduciary relationship with prospective purchasers, a real estate agent hired by the vendor is expected to be honest, ethical, and competent and is answerable at law for breaches of his or her statutory duty to the public.' " *Id.* at ¶ 22 (quoting *Dugan v. Jones*, 615 P.2d 1239, 1248 (Utah 1980)). Moreover, real estate agents have a duty to " 'deal fairly and honestly, despite the fact that the broker is acting primarily as the seller's agent.' " *Id.* at ¶ 20 (quoting *Secor*, 716 P.2d at 795 n. 1 (additional citations omitted)). One of the "purposes for imposing a duty to disclose accurate or complete information [is] 'to protect the buyer from the unethical broker and seller and to insure that the buyer is provided sufficient accurate information to make an informed decision whether to purchase.' " *Id.* (quoting *Secor*, 716 P.2d at 795 n. 1 (additional citations omitted)).

### III.   Whether Real Estate Appraisers Owe an Independent Duty

■■■ ¶ 19 Turning to the instant matter, we must ascertain whether the economic loss rule applies to real estate appraisers under *American Towers* and its progeny, *see, e.g.*, *SME Indus.*, 2001 UT 54, 28 P.3d 669 (involving design or construction defects); *American Towers*, 930 P.2d 1182 (same); *Fennell v. Green*, 2003 UT App 291, 77 P.3d 339 (same), or if real estate appraisers, like other real estate professionals, owe an independent duty to non-contracting buyers, thereby removing them from the rubric of the economic loss rule, *see Hermansen*, 2002 UT 52 at ¶ 23, 48 P.3d 235.

¶ 20 Based on analogous Utah case law, professional statutory duties, and persuasive authority from other jurisdictions addressing real estate appraisers' independent duty to non-contracting parties, we conclude that real estate appraisers are more similar to real estate brokers, accountants, or surveyors, than to construction or design professionals. Thus, we hold that real estate appraisers may be liable to third parties for economic damages as a matter of law.

¶ 21 The rationale for applying the economic loss rule as described in Utah case law is not present here. The supreme court applied the economic loss rule in design and construction contexts because of the ability of parties to allocate risk by contract. *See American Towers*, 930 P.2d at 1192; *Fennell*, 2003 UT App 291 at ¶ 15, 77 P.3d 339. In *American Towers* and *Fennell*, the plaintiffs had no contractual relationship with the defendants, yet in both situations, the supreme court found that the plaintiffs *could* have avoided their economic loss with contracts. *See American Towers*, 930 P.2d at 1192; *Fennell*, 2003 UT App 291 at ¶ 15, 77 P.3d 339. In contrast, a contractual relationship between the plaintiff and real estate professionals in *Hermansen* is inapposite due to their direct relationship, and the real estate professionals' resulting independent duty to

---

5.   In support of its holding, the *Hermansen* court "expressly adopted [Colorado's] interpretation of the economic loss rule." *Hermansen v. Tasulis*, 2002 UT 52, ¶ 17, 48 P.3d 235; *see also Grynberg*
*v. Agri Tech, Inc.*, 10 P.3d 1267 (Colo.2000); *Town of Alma v. Azco Constr., Inc.*, 10 P.3d 1256 (Colo.2000).

plaintiffs. *See* 2002 UT 52 at ¶¶ 14, 17, 48 P.3d 235.

¶ 22 In this case, not only do we find the Wests' breach of contract action unavailing, we also find that, similar to *Hermansen,* Defendants could have had a direct relationship with buyers of the appraised property. *See id.* at ¶ 14. Real estate appraisers have an independent duty of care to persons with whom they have no contractual relationship when performing an appraisal, just as the real estate professionals in *Hermansen* owed the buyers a duty to be "honest, ethical, and competent" in providing accurate information. *Id.* at ¶ 23.

¶ 23 Defendants, however, maintain that *Fennell,* which also involved a real estate professional's purported negligent misrepresentation, is analogous to the instant matter. *See* 2003 UT App 291 at ¶¶ 4, 13, 77 P.3d 339. In *Fennell,* the plaintiff hired a real estate developer to construct a house on a lot owned by defendants. *See id.* at ¶ 3. The developer subsequently agreed to purchase defendants' lot for the house. *See id.* After the developer constructed Fennell's house on the lot, a landslide occurred, causing solely economic damage. *See id.* Under the economic loss rule, the trial court barred Fennell's claim for negligent misrepresentation for the lot owners' failure to disclose data that his property was prone to landslides. *See id.* at ¶ 4. On appeal, this court compared the *Fennell* plaintiffs to the owners association in *American Towers* because neither had a contractual relationship with defendants, thus invoking the economic loss rule "to prevent the imposition of 'economic expectations' on non-contracting parties." *Id.* at ¶ 15 (quoting *American Towers,* 930 P.2d at 1192).

¶ 24 In contrast, we believe that real estate appraisers are similar to real estate brokers and agents. Despite our previous comparison of *Fennell* to *American Towers,* we clearly distinguished the facts of *Fennell* from those of *Hermansen:* "[*Hermansen* ]

can be distinguished from the claim against [defendants] because in *Hermansen* the defendants had an independent duty to plaintiffs as real estate professionals." *Id.* at ¶ 15 n. 7; *see also Hermansen,* 2002 UT 52 at ¶ 23, 48 P.3d 235.

¶ 25 Real estate appraisers, like real estate brokers and real estate agents, have a "statutory duty to the public" and are expected to be "honest, ethical, and competent." *Hermansen,* 2002 UT 52 at ¶ 22, 48 P.3d 235 (quoting *Dugan v. Jones,* 615 P.2d 1239, 1248 (Utah 1980)). Real estate appraisers are similarly "licensed person[s] or entit[ies] who hold[ ] [themselves] out to the public as having particular skills and knowledge in the real estate field." *Id.* at ¶ 20 (quoting *Secor v. Knight,* 716 P.2d 790, 795 n. 1 (Utah 1986) (additional citations omitted)).

¶ 26 Under Utah Code section 61–2b–3, any person who prepares an appraisal report must be licensed or certified. *See* Utah Code Ann. § 61–2b–3(1) (Supp.2005). Furthermore, under section 61–2b–27, appraisers are held to "generally accepted standards of professional appraisal practice as evidenced by the Uniform Standards of Professional Appraisal Practice [USPAP] promulgated by the Appraisal Foundation." *Id.* § 61–2b–27(1)(b). The USPAP specifically requires appraisers to avoid "commit[ting] a substantial error of omission or commission that significantly affects an appraisal." USPAP R. 1–1(b) (2006). Moreover, "[h]onesty, impartiality, and professional competency are required of all appraisers." USPAP Ethics Rule cmt. (2006).[6]

¶ 27 Turning to the Wests' negligent misrepresentation claim, under Restatement section 552, a real estate appraiser is "[o]ne who, in the course of his business, profession or employment" could become liable for economic losses if he or she "supplies false information" and "fails to exercise reasonable care or competence in obtaining or com-

---

6. Defendants cite a Virginia case, *Provident Bank v. O'Brien,* 53 Va. Cir. 107 (Va. Cir.2000), to support their contention that the USPAP does not create an independent duty of care. *See id.* at 110 ("[Virginia Real Estate Appraiser Board] do not create legal duties that, if breached, are actionable at common law or under any Virginia statute. Rather, they provide a guideline for regulating the profession."). Although Utah statutes similarly allow the USPAP to create guidelines for the profession, rather than allow a specific cause of action, Utah common law distinctly creates a common law independent duty of care. *See Hermansen,* 2002 UT 52 at ¶ 23, 48 P.3d 235.

municating the information." Restatement (Second) of Torts § 552 (1977). He or she is liable to "a limited group of persons for whose benefit and guidance he [or she] intended to supply" the information if it justifiably relied on it. *Id.* "Section 552 ... clearly, by its terms, govern[s] real estate appraisers, who, as an integral part of their business, facilitate real-estate transactions by issuing opinions regarding the value of real property." *Fisher v. Comer Plantation, Inc.,* 772 So.2d 455, 462 (Ala.2000). Moreover, real estate appraisers, similar to accountants or surveyors, cannot assert lack of privity as a defense when they are aware that third parties may reasonably rely on their work. *See Price–Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.,* 713 P.2d 55, 59 (Utah 1986); *Milliner v. Elmer Fox & Co.,* 529 P.2d 806, 808 (Utah 1974).

¶ 28 In addition, courts in other jurisdictions have held that real estate appraisers may be liable to non-contracting buyers for negligence or negligent misrepresentation. *See, e.g., Fisher,* 772 So.2d at 462 (concluding real estate appraiser owes duty to "specifically foreseen and limited groups of third parties for whose benefit and guidance" an appraisal was supplied (quotations and citation omitted)); *Soderberg v. McKinney,* 44 Cal. App.4th 1760, 52 Cal.Rptr.2d 635, 640–41 (1996) (reinstating negligent misrepresentation claim because appraiser knew investors, a class of persons to which plaintiff belonged, would rely on report prepared for mortgage broker); *Larsen v. United Fed. Sav. & Loan Assoc. of Des Moines,* 300 N.W.2d 281, 287 (Iowa 1981) (determining that buyers are among class of persons reasonably intended to rely on appraisal prepared for lending institution); *Stotlar v. Hester,* 92 N.M. 26, 582 P.2d 403, 406–07 (1978) (remanding for trial court to determine if appraisal was prepared to benefit and guide plaintiffs, and if plaintiffs relied on it); *Alva v. Cloninger,* 51 N.C.App. 602, 277 S.E.2d 535, 540 (1981) (stating jury should have been allowed to determine if mortgage company's appraiser was negligent because he should have reasonably foreseen that buyers would rely on appraisal); *Costa v. Neimon,* 123 Wis.2d 410, 366 N.W.2d 896, 899 (App.1985) (affirming judgment finding real estate appraiser liable for negligent misrepresentation that foreseeably harmed a non-contracting party even though the particular party was not known at the time). *But see Schaaf v. Highfield,* 127 Wash.2d 17, 896 P.2d 665, 670 (1995) ("[L]iability of a real estate appraiser ... extends only to those involved in the transaction that triggered the appraisal report, including ... the buyer and the seller.").

### CONCLUSION

¶ 29 We conclude that the Wests' negligence and negligent misrepresentation claims are not barred as a matter of law because real estate appraisers, like other real estate professionals, are not shielded by the economic loss rule and have an independent duty to non-contracting parties. Accordingly, we reverse the trial court's ruling and remand for proceedings consistent with this opinion. We affirm the dismissal of Plaintiffs' contract claim.

¶ 30 I CONCUR: JUDITH M. BILLINGS, Judge.

¶ 31 I CONCUR IN THE RESULT: RUSSELL W. BENCH, Presiding Judge.