**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ACLYS INTERNATIONAL, a Utah
limited liability company,

      Plaintiff - Appellant,

v.

EQUIFAX, a Georgia corporation,

      Defendant - Appellee.

No. 10-4097
(D. Utah)
(D.C. No. 2:08-CV-00954-TC)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, **TYMKOVICH**, and **GORSUCH**, Circuit Judges.

Aclys International, LLC, appeals from the district court's order dismissing its suit

against Equifax, Inc., which the court concluded was barred by the economic loss

doctrine, a limitation on damages resulting from breach of contract. Aclys argues the

economic loss doctrine does not apply because there was no contract between it and

Equifax because Equifax owed it an independent duty of care. We affirm

---

[*] This order and judgment is an unpublished decision, not binding precedent. 10th
Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1.
It is appropriate as it relates to law of the case, issue preclusion and claim preclusion.
Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A).
Citation to an order and judgment must be accompanied by an appropriate parenthetical
notation – (unpublished). *Id.*

## I.  BACKGROUND

Aclys hired First Credit Corporation (FCC) to investigate a group of prospective borrowers (individuals and related entities) to whom Aclys planned to provide purchase-order financing for high-end merchandise.[1]  FCC ordered credit reports on the named borrowers from Equifax as part of the investigation.  The credit reports showed a few minor debts by one of the borrowers had gone to collection but no outstanding judgments.  The reports did not reveal the existence of separate judgments against one of the borrowers in two different states (one in California for contract fraud in the amount of $157,840.22 and another in Wisconsin for $236,047.67).  The judgments were in place at the time the report was submitted.  Aclys loaned more than $5,000,000 to the borrowers who defaulted and apparently fled the country.  Aclys obtained judgments against the borrowers and seized their assets but was only able to recover a fraction of its loss.  It sued FCC and obtained what it refers to as an "uncollectible" judgment for the full amount of the loss caused by FCC's failure to properly investigate the borrowers. (Appellant Br. at 11.)

Aclys filed the instant action against Equifax in Utah State court for negligence and negligent misrepresentation based on Equifax's failure to report the two judgments. Although it had no direct contract with Equifax, Aclys claimed it relied on the report in deciding to extend credit on which the borrowers later defaulted.  Equifax removed the

---

[1] The district court dismissed the case under Rule 12(c) of the Federal Rules of Civil Procedure.  Therefore, we must assume the factual allegations are true and set forth the facts as pled in the complaint.  *Nelson v. State Farm Mut. Auto. Ins. Co.*, 419 F.3d 1117, 1119 (10th Cir. 2005).

case to federal court based on diversity jurisdiction and subsequently moved for judgment on the pleadings, arguing Aclys' claims were barred by the economic loss rule. The district court granted the motion.

## II. DISCUSSION

The standard for review of a ruling under Rule 12(c) is de novo. *Bixler v. Foster*, 596 F.3d 751, 755 n.2 (2010). Application of the economic loss doctrine is a question of law in Utah, also reviewed de novo.[2] *Grynberg v. Questar Pipeline Co.*, 70 P.3d 1, 10 (Utah 2003); *Kokins v. Teleflex, Inc.*, 621 F.3d 1290, 1294 (10th Cir. 2010).

> The economic loss rule serves two purposes. First, it bars recovery of economic losses in negligence actions unless the plaintiff can show physical damage to other property or bodily injury. Second, the economic loss rule prevents parties who have contracted with each other from recovering beyond the bargained-for risks. In essence, the economic loss rule marks the fundamental boundary between contract law, which protects expectancy interests created through agreement between the parties, and tort law, which protects individuals and their property from physical harm by imposing a duty of reasonable care.

*Sunridge Dev. Corp. v. RB & G Eng'g, Inc.*, 230 P.3d 1000, 1006 (Utah 2010) (citation and quotations omitted).

Application of the rule is not limited to cases where there is a direct contract between the parties. In *Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, the Utah Supreme Court concluded:

> Exempting strangers to a contract from the economic loss rule would convert a contract cause of action into one for tort. For example, although a purchaser of a home cannot recover economic losses under a negligence claim against a subcontractor, the logic behind the Association's argument would require recovery because the purchaser had no contract or

---

[2] Both parties agree that Utah law applies in this diversity action.

opportunity to negotiate. Any existing contract action between the purchaser and the contractor and the contractor and subcontractor would no longer govern if a tort cause of action for negligence were permitted. The nature of these relationships does not alter the economic loss rule merely because a plaintiff had no contract or opportunity to negotiate a contract. A contrary rule would frustrate the economic expectations of the contracting parties and undermine the intrinsic differences in contract and negligence law.

221 P.3d 234, 243 (Utah 2009).

> [A] party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach *absent an independent duty of care* under tort law . . . . Therefore, the initial inquiry in cases where the line between contract and tort blurs is whether a duty exists independent of any contractual obligations between the parties. When an independent duty exists, the economic loss rule does not bar a tort claim because the claim is based on a recognized independent duty of care and thus does not fall within the scope of the rule.

*Hermansen v. Tasulis*, 48 P.3d 235, 240 (Utah 2002) (quotations omitted).

Here, the purely economic damages arose from a series of contractual relationships between Aclys, FCC, and Equifax. While it is undisputed that no direct contract existed between Aclys and Equifax with regard to the credit report at issue, Acyls' negligence action seeks only economic damages. Aclys is barred from recovery under the economic loss rule unless it can show Equifax owed it an independent duty of care.

Aclys argues Equifax had an independent duty under Utah's law on negligent misrepresentation and it breached that duty by the "material omission" of the judgments from the credit report.[3] (Appellant Br. at 7.) However, Utah's negligent

---

[3] "[I]n an abundance of caution" Equifax briefed the argument raised by Aclys in the district court that Equifax had an independent duty of care under the Fair Credit

misrepresentation law relies on statutory or common law duties of care to impose liability

for failure to disclose material facts.

> Thus, interpreting the elements of the tort in a manner consistent with principles of common-law fraud, we have found that in addition to affirmative misstatements, an omission may be actionable as a negligent misrepresentation where the defendant has a duty to disclose. *Sugarhouse Fin. Co. v. Anderson*, 610 P.2d 1369, 1373 (Utah 1980) ("Misrepresentation may be made either by affirmative statement or by material omission, where there exists a duty to speak."); *DeBry v. Valley Mortgage Co.*, 835 P.2d 1000, 1008 (Utah Ct. App. 1992) (denying liability for an "implied" misrepresentation where the defendant mortgage company owed no duty to disclose information to purchasers of real property). Thus, a duty to disclose is a necessary element of the tort of negligent misrepresentation.

*Smith v. Frandsen*, 94 P.3d 919, 923 (Utah 2004). Aclys can point to no independent

duty (outside any contractual or quasi-contractual duty arising from Equifax's agreement

with FCC) imposed on a credit reporting agency under Utah law to disclose the kind of

information omitted from the credit reports at issue. While not expressly stated, its policy

argument – such a duty should be recognized – asks us to impose a new tort duty in

Utah.[4]

---

Reporting Act. (Appellee Br. at 15 n.4.) Since Aclys did not pursue the argument on appeal, it is waived. *See Kokins*, 621 F.3d at 1302 n.6.

[4] The parties base much of their argument about whether a duty should be recognized on the foreseeability of Acyls' reliance and the direct or indirect nature of the relationship between the parties. But those points are relevant in the negligent misrepresentation context only where a duty of disclosure clearly exists and the question is only to whom the duty is owed. *See Hermansen*, 48 P.3d at 241 (concluding a real estate broker has a duty to be honest, ethical and competent with the public and therefore an independent duty to disclose known facts to a purchaser even if he is retained by the seller); *West v. Inter-Financial, Inc.*, 139 P.3d 1059, 1065 (Utah App. 2006) (concluding a real estate appraiser has statutory professional duties akin to those of a real estate agent and therefore has an independent duty of professional competence in conducting an appraisal, which extends to third parties who rely on the appraisal).

Acyls' argument fails for two reasons. First, "[a]s a federal court, we are generally reticent to expand state law without clear guidance from its highest court . . . ." *Taylor v. Phelan*, 9 F.3d 882, 887 (10th Cir. 1993). Second, "[t]he question of whether a duty exists is a question of law and involves the examination of the legal relationships between the parties, an analysis of the duties created by these relationships, and policy judgments applied to relationships." *Davencourt at Pilgrims Landing Homeowners Ass'n*, 221 P.3d at 244 (quotations omitted). The duties giving rise to negligent misrepresentation claims generally arise from professional duties of competence and fiduciary duties. *See, e.g., Hermansen*, 48 P.3d at 240-41 (licensed real estate broker has statutory duty to the public to disclose known facts about a property); *Price-Orem Inv. Co. v. Rollins, Brown, & Gunnell, Inc.*, 713 P.2d 55, 59 (Utah 1986) (allowing claim for negligent misrepresentation for faulty survey where engineering firm was bound to survey and stake property "with that degree of care and skill expected of licensed surveyors and/or engineers"); *Milliner v. Elmer Fox & Co.*, 529 P.2d 806, 808 (Utah 1974) (acknowledging accountant can be held liable for negligence to client and reasonably foreseeable third parties in preparing financial statements but declining to extend the liability to unlimited class of third parties, *i.e.*, purchasers of client's stock). Existing Utah law imposes no such professional or fiduciary duty on the part of Equifax here and Aclys has not presented any compelling policy reason for creating an independent duty to protect a sophisticated commercial third party from a negligently prepared credit report, particularly where the omitted information is of public record. That is especially true when a federal court is asked to make a policy laden choice for the

State of Utah.

AFFIRMED.

Entered by the Court:

**Terrence L. O'Brien**
United States Circuit Judge